**CASE NO. 16-5929**

---

**UNITED STATES COURT OF APPEALS**

**FOR THE SIXTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee**

**v.**

**RONNIE McCALL,**

**Defendant-Appellant**

---

**ON APPEAL FROM THE UNITED STATES
DISTRICT COURT, EASTERN DISTRICT
OF TENNESSEE, AT GREENEVILLE**

---

**BRIEF OF APPELLANT**

Laura E. Davis
Assistant Federal Defender
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, Tennessee    37929
(865) 637-7979
Attorney for Ronnie McCall

**ORAL ARGUMENT REQUESTED**

1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ...............................1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....2

STATEMENT OF THE ISSUES PRESENTED.......................................3

STATEMENT OF THE CASE AND RELEVANT FACTS ..................................4

SUMMARY OF THE ARGUMENT ....................................................14

STANDARD OF REVIEW ...............................................................15

ARGUMENT .................................................................................16

    *I.    Because Mr. McCall did not know for sure the child would be used for child pornography production when transported out of state, he cannot be guilty of violating 18 U.S.C. § 2251A, Count One of his indictment.*............................16

    *II.    Mr. McCall's offense level was incorrectly calculated by assigning too many victims to each of three offenses.*...............................21

CONCLUSION .............................................................................24

CERTIFICATE OF SERVICE .........................................................25

CERTIFICATE OF COMPLIANCE...................................................26

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............27

# TABLE OF AUTHORITIES

Page

## U.S. Supreme Court Cases

*Gall v. United States*, 552 U.S. 38 (2007) ...............................................................15

*United States v. Booker*, 543 U.S. 220 (2005) ...........................................................2

## U.S. Court of Appeals Cases

*United States v. Block*, 635 F.3d 721 (5th Cir. 2011) ........................... 16, 18, 20, 21

*United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007) ...................................... 15, 22

*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004) ..................................... 15, 22

*United States v. Buculei*, 262 F.3d 322 (2001) .........................................................16

*United States v. Doyle*, 711 F.3d 729 (6th Cir. 2013) ..................................... 22, 23

*United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010) .........................................16

*United States v. Garcia*, 758 F.3d 714 (6th Cir. 2014)............................................15

*United States v. Howard*, 621 F.3d 433 (6th Cir. 2010) .................................. 15, 21

*United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012)..........................................23

*United States v. Judge*, 649 F.3d 453 (6th Cir. 2011) ..................................... 15, 22

*United States v. LaBrecque*, 433 F. App'x 551 (9th Cir. 2011) ...................... 16, 20

*United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007)..................................15

*United States v. Moser*, 235 F. App'x 138 (2007)...................................................16

*United States v. O'Connor*, 650 F.3d 839 (2nd Cir. 2011)........................ 16, 20, 21

iii

*United States v. Sherer*, 770 F.3d 407 (6th Cir. 2014) ............................................21

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) ...........................................22

*Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355 (5th Cir. 2009)............................18

## Federal Statutes

18 U.S.C. § 2251(a) .................................................................................. 2, 16, 18

18 U.S.C. § 2251(b) .......................................................................................2, 10

18 U.S.C. § 2251A ...................................................................................... *passim*

18 U.S.C. § 2422(b) ...............................................................................................2

18 U.S.C. § 3231 ...................................................................................................2

18 U.S.C. § 3553(a) ..............................................................................................2

18 U.S.C. § 3742 ...................................................................................................2

28 U.S.C. § 1291 ...................................................................................................2

## Rules

Federal Rules of Appellate Procedure 3 ...............................................................2

Federal Rules of Appellate Procedure 4 ...............................................................2

Federal Rules of Criminal Procedure 18................................................................2

Federal Rules of Criminal Procedure 29................................................... 9, 22, 23

Rules of the Sixth Circuit, Rule 34(a)....................................................................1

## U.S. Sentencing Guidelines

§ 3D1.4.................................................................................................. 11, 12, 22

§ 5K ...........................................................................................................19

## **Other Authorities**

PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, p. 579 (2012

   ed.) .......................................................................................................17

www.ca7.uscourts.gov/**Pattern_Jury**_Instr/**7th**_criminal_**jury**_instr.pdf ............16

## STATEMENT REGARDING ORAL ARGUMENT

Mr. McCall's argument regarding application of 18 U.S.C. § 2251A is a matter of first impression in this Circuit and has not been addressed by many other Circuits. While the facts relating to that challenge are relatively straightforward, the legal arguments and examination of the ramifications of those arguments are sufficiently complex and unique that the decisional process would be significantly aided by oral argument. Therefore, pursuant to Rules of the Sixth Circuit, Rule 34(a), oral argument is requested.

## STATEMENT OF SUBJECT MATTER AND APPELLATE

## JURISDICTION

This is a federal criminal prosecution arising out of acts occurring in the Eastern District of Tennessee and prosecuted by Indictment under 18 U.S.C. § 2251A (selling child for child pornography production); 18 U.S.C. § 2251(a) (child pornography production); 18 U.S.C. § 2251(b) (child pornography production by parents); and 18 U.S.C. § 2422(b) (coercion and enticement of a minor). (Indictment, R. 3, Page ID# 3-5). The district court below exercised jurisdiction pursuant to 18 U.S.C. § 3231 and Federal Rules of Criminal Procedure 18.

This is an appeal as of right, taken pursuant to Federal Rules of Appellate Procedure 3 and 4, from the district court to the Sixth Circuit Court of Appeals with jurisdiction over this district. Jurisdiction is proper under 28 U.S.C. § 1291, and under 18 U.S.C. § 3742[1] with regard to the sentencing issues. Judgment was entered on June 20, 2016. (Judgment, R. 182, Page ID# 1339). A timely Notice of Appeal was filed on June 20, 2016. (Notice of Appeal, R. 184, Page ID# 1351).

---

[1] Per *United States v. Booker*, 543 U.S. 220, 260 (2005), § 3742 provides for appeals from sentencing decisions, "irrespective of whether the trial judge sentences within or outside the Guidelines range in the exercise of his discretionary power under § 3553(a)."

2

## STATEMENT OF THE ISSUES PRESENTED

Was there insufficient proof of Ronnie McCall's violation of 18 U.S.C. § 2251A, when the government failed to prove Mr. McCall (or his wife) knew that child pornography would be produced when they transferred custody of T.G. and she crossed state lines, when such knowledge is an element of § 2251A?

Did the district court clearly err in calculating Mr. McCall's guidelines, when the Presentence Report assigned three victims to each of three offenses, despite the government's assertion during trial that each offense related to one specific victim?

## STATEMENT OF THE CASE AND RELEVANT FACTS

On appeal, Ronnie McCall is challenging his conviction only on Count 1 of the Indictment, which accused him and his wife Connie McCall of aiding and abetting each other in transferring custody of a minor knowing the child would be used for child pornography production, during which time the child traveled in interstate commerce, in August 2011. (Indictment, R. 3, Page ID# 3). Mr. McCall also challenges the calculation of his advisory guideline range. Therefore, the facts conveyed below are only those relevant to those two issues.

Ronnie Lee McCall and his wife Connie Gentry Stout McCall had three children together: S.M. (born December 19, 1996), C.M. (born October 24, 1999), and F.M. (born November 28, 2005).[2] (TR Trial Vol. II, R. 198, Page ID# 2186). Connie McCall also had a daughter, T.G. (born November 19, 1994), who was three months old when Connie got together with Ronnie McCall. (TR Trial Vol. II, R. 198, Page ID# 2186). According to T.G., Ronnie McCall had "fathered me since I was a baby." (TR Trial Vol. II, R. 198, Page ID# 2116).

---

[2] These three girls have been formally adopted by their foster family and have changed their names. For privacy and ease of reference, they will be referred to by the initials they had while still living with their parents.

4

T.G. testified that in 2011 (when she was 16 and 17), Ronnie and Connie

McCall did a lot of drugs: bath salts, pills,[3] and alcohol, among others.  (TR Trial

Vol. II, R. 198, Page ID# 2121).  T.G. knew this in part because she was doing

drugs and drinking with them.  (TR Trial Vol. II, R. 198, Page ID# 2121).  Ronnie

McCall controlled the family's money and only vehicle.  (TR Trial Vol. II, R. 198,

Page ID# 2121).

T.G. and her family had known David Berry since T.G.'s early childhood.

(TR Trial Vol. II, R. 198, Page ID# 2123).  He first ran one store where they would

buy snacks and groceries, and then "got a better store" called the Marathon or the

Trailblazer.  (TR Trial Vol. II, R. 198, Page ID# 2123).  He was part owner of the

Trailblazer.  (TR Trial Vol. II, R. 198, Page ID# 2198).  Mr. Berry lived in an

apartment above the store.  (TR Trial Vol. II, R. 198, Page ID# 2123).

Sometime in the early months of 2011, Mr. Berry approached Ronnie and

Connie McCall and asked about the girls doing some modeling for him.  (TR Trial

Vol. II, R. 198, Page ID# 2199, 2127).  The McCalls brought T.G. and S.M. over

to Mr. Berry's apartment that evening.  (TR Trial Vol. II, R. 198, Page ID# 2199,

2200).  At the apartment, Ronnie McCall stayed in the living room watching

---

[3]  Per Connie McCall, they used Klonopin, Xanax, and Hydrocodone. (TR Trial
Vol. II, R. 198, Page ID# 2194).

television while Connie and the girls went into Mr. Berry's bedroom.  (TR Trial Vol. II, R. 198, Page ID# 2124, 2125).

Once in the bedroom, Mr. Berry asked Connie McCall if it would be okay for the girls to put on clothes – lingerie – that he had.  (TR Trial Vol. II, R. 198, Page ID# 2124).  T.G. remembered putting on a purple lingerie shirt and her sister put on something red.  (TR Trial Vol. II, R. 198, Page ID# 2124, 2125).  They were told to get on the bed and pose together.  (TR Trial Vol. II, R. 198, Page ID# 2125).  David Berry took pictures while Connie McCall watched.  (TR Trial Vol. II, R. 198, Page ID# 2125).  At some point, the girls took their tops off.  (TR Trial Vol. II, R. 198, Page ID# 2125).  Mr. Berry gave the girls $50, which S.M. turned over to her father.  (TR Trial Vol. II, R. 198, Page ID# 2201, 2202).

Between that first occasion and July 2011, T.G. "was going over [to Mr. Berry's] frequently having sex for money."  (TR Trial Vol. II, R. 198, Page ID# 2127).  Mr. Berry also took pictures and made some videos.  (TR Trial Vol. II, R. 198, Page ID# 2127).  Mr. Berry would text Connie McCall that he wanted to see T.G., and Connie would tell T.G.  (TR Trial Vol. II, R. 198, Page ID#2128).  T.G. testified Ronnie McCall would take her to Mr. Berry's apartment, and mostly Mr. Berry would drive her back, letting her out close to home.  (TR Trial Vol. II, R. 198, Page ID# 2128, 2129).

6

T.G. estimated that between the first visit and July 2011, she went over to Mr. Berry's apartment 40 times. (TR Trial Vol. II, R. 198, Page ID# 2129). Mr. Berry would pay her $200 for the night, $400 to spend the night, and $800 "to spend a whole weekend." (TR Trial Vol. II, R. 198, Page ID# 2129). She would give the money to Ronnie and Connie McCall. (TR Trial Vol. II, R. 198, Page ID# 2129). Ronnie and Connie McCall would buy T.G. liquor and get high with her. (TR Trial Vol. II, R. 198, Page ID# 2129). Almost every night T.G. returned home from being with David Berry, Ronnie McCall would give her alcohol. (TR Trial Vol. II, R. 198, Page ID# 2139, 2140). One time, Connie McCall watched a pornographic movie with T.G., to give her suggestions for when she was with Mr. Berry. (TR Trial Vol. II, R. 198, Page ID# 2159).

T.G. told Ronnie and Connie McCall that she did not like having sex with Mr. Berry. (TR Trial Vol. II, R. 198, Page ID# 2131). She told them it made her feel dirty, it made her "hurt in my places," and she felt very uncomfortable. (TR Trial Vol. II, R. 198, Page ID# 2131). T.G. complained to Ronnie and Connie McCall about how terrible it was, how it felt, and how badly she wanted to shower. (TR Trial Vol. II, R. 198, Page ID# 2131). T.G. repeatedly complained to Ronnie and Connie McCall about having sex with Mr. Berry and posing for pictures. (TR Trial Vol. II, R. 198, Page ID# 2139). T.G. testified that Ronnie McCall "asked her to comply with David Berry's demands for sex" more than five times. (TR

7

Trial Vol. II, R. 198, Page ID# 2139). Ronnie McCall knew David Berry took lewd photographs of T.G., and he knew David Berry engaged in sexual intercourse with T.G. (TR Trial Vol. II, R. 198, Page ID# 2140, 2141).

T.G. estimated she had sex with David Berry a little under 40 times, and he took pictures of her with her clothes off several times. (TR Trial Vol. II, R. 198, Page ID# 2134).

Connie McCall testified that in August 2011, she and Ronnie McCall were in the Trailblazer market when Mr. Berry asked if he could take T.G. to the beach with him for the weekend. (TR Trial Vol. II, R. 198, Page ID# 2206). Connie McCall testified that Ronnie McCall agreed. (TR Trial Vol. II, R. 198, Page ID# 2206).

T.G. testified that when she learned of the trip from her mother, she thought Mr. Berry had made plans with Connie McCall via text messaging. (TR Trial Vol. II, R. 198, Page ID# 2135). Mr. Berry took T.G. to Myrtle Beach, where they stayed at a hotel a couple of nights. (TR Trial Vol. II, R. 198, Page ID# 2135). Mr. Berry raped T.G. and also involved sex toys. (TR Trial Vol. II, R. 198, Page ID# 2135, 2136). He gave her alcohol – Crown Royal – to drink, paid for her to have her hair done, and bought her gifts. (TR Trial Vol. II, R. 198, Page ID# 2135, 2136). Mr. Berry also took pictures of T.G. (TR Trial Vol. II, R. 198, Page ID#

2137).  Mr. Berry gave T.G. $800, which she later gave to Ronnie McCall.  (TR
Trial Vol. II, R. 198, Page ID# 2138).

At the close of the government's evidence, Mr. McCall made a motion for
judgment of acquittal pursuant to Federal Rules of Criminal Procedure Rule 29.
(TR Trial Vol. II, R. 198, Page ID# 2284).  He argued the evidence was
insufficient to prove him guilty.  (TR Trial Vol. II, R. 198, Page ID# 2284).  The
government argued they had produced sufficient evidence.  (TR Trial Vol. II, R.
198, Page ID# 2284-2286).  Relevant to Mr. McCall's eventual sentencing, the
government argued Count 1 pertained to T.G., Count 2 pertained to T.G., Count 3
pertained to S.M., and Count 4 pertained to C.M.  (TR Trial Vol. II, R. 198, Page
ID# 2285, 2286).[4]  The district court denied Mr. McCall's motion.  (TR Trial Vol.
II, R. 198, Page ID# 2288).

At the close of all the evidence, Mr. McCall renewed his motion for
judgment of acquittal pursuant to Federal Rules od Criminal Procedure Rule 29.
(TR Trial Vol. III, R. 199, Page ID# 2346).  He again argued the evidence was
insufficient to convict.  (TR Trial Vol. III, R. 199, Page ID# 2346).  The district
court again denied his motion.  (TR Trial Vol. III, R. 199, Page ID# 2346).

---

[4]  C.M. had testified to going over to Mr. Berry's home "to have sex with him for
rent money" three times and Mr. Berry having taken naked pictures of her.  (TR
Trial Vo. II, R. 198, Page ID# 2166, 2167).  C.M. also testified that Mr. Berry had
had sex with S.M.  (TR Trial Vol. II, R. 198, Page ID# 2170).

The jury convicted Mr. McCall on all four counts.  (Jury Verdict, R. 145,
Page ID# 1187-1189).

Procedural history

The Office of Child Safety removed all four children from the McCall home
in July 2012.  (TR Trial Vol. I, R. 197, Page ID# 2009, 2025, 2027).  Police
executed search warrants on David Berry's home and vehicle on August 30, 2012.
(TR Trial Vol. I, R. 197, Page ID# 2003).  On August 31, 2012, Mr. Berry
committed suicide by shooting himself in the head.  (TR Trial Vol. I, R. 197, Page
ID# 2003).

Federal prosecution was initiated via Indictment on October 8, 2013.
(Indictment, R. 3, Page ID# 3).

Prior to Mr. McCall's trial, Connie McCall pled guilty to Count Three of the
indictment, production of child pornography by a parent in violation of 18 U.S.C. §
2251(b).  (Plea Agreement, R. 23, Page ID# 37; Minute Entry, R. 29, Page ID#
57).  She faced a 15-year mandatory minimum sentence, with a possible maximum
of 30 years.  (Plea Agreement, R. 23, Page ID# 37).[5]

After defense delays to address possible issues of competency, as well as
joint requests to continue trial, McCall was tried by jury in January 2016.  (Motion

---

[5] Connie McCall was ultimately sentenced, after Mr. McCall's trial, to serve 18
years in prison followed by supervised release for life.  (Connie McCall Judgment,
R. 171, Page ID# 1245, 1246).

for Psychiatric Exam, R. 25, Page ID# 48, 49; Joint Motion to Continue, R. 113, Page ID# 1068, 1069; TR Trial Vol. I, R. 197, Page ID# 1975). T.G. and C.M. testified, in addition to other civilian and law enforcement witnesses. (TR Trial Vol. II, R. 198, Page ID# 2115-2180). Connie McCall testified. (TR Trial Vol. II, R. 198, Page ID# 2182-2257). The jury convicted Mr. McCall on all four counts. (Jury Verdict, R. 145, Page ID# 1187-1189).

The United States Probation Office prepared a Presentence Report. (Presentence Report ("PSR") (sealed document), R. 175, Page ID# 1257). In it, it referred to T.G. as "Victim Number One," S.M. as "Victim Number Two," and C.M. as "Victim Number Three." (PSR, R. 175, Page ID# 1260, 1261). In calculating the offense level, the probation officer stated Count Two had three victims: T.G., S.M., and C.M. (PSR, R. 175, Page ID# 1265, 1266). It also stated Count Three had three victims: T.G., S.M., and C.M. (PSR, R. 175, Page ID# 1266-1268). Finally, it also stated Count Four had three victims: T.G., S.M., and C.M. (PSR, R. 175, Page ID# 1268, 1269). Based on these assignments, the Multiple Count Adjustment contained a total of 8.5 units. (PSR, R. 175, Page ID# 1269). Had the probation officer credited victims to offenses the way the government did during trial, Mr. McCall would have 3.5 units. Mr. McCall's offense level, before adding in the multiple count adjustment, was 38. (PSR, R. 175, Page ID# 1270). Based on the probation officer's calculation of 8.5 units,

11

five points were added pursuant to U.S.S.G. § 3D1.4, making his Total Offense

Level 43. (PSR, R. 175, Page ID# 1270). If Mr. McCall only properly had 3.5

units, his offense level would have been increased only 4 levels under § 3D1.4, for

a Total Offense Level of 42, and an advisory guideline range of 360 months to life

in prison. Instead, Mr. McCall's advisory guideline range was calculated to be

Life, based on a total offense level of 43 and a criminal history category of II. (TR

Sentencing, R. 194, Page ID# 1936).

Neither Mr. McCall nor the government filed objections. (TR Sentencing,

R. 194, Page ID# 1937). The government filed a sentencing memorandum arguing

for a life sentence. (Sentencing Memo, R. 178, Page ID# 1285-1287). Mr. McCall

did not file a sentencing memorandum, nor did he make argument at sentencing

except for disagreeing with the facts related by the government. (TR Sentencing,

R. 194, Page ID# 1942).

The district court discussed at length its reasons for imposing its sentence.

(TR Sentencing, R. 194, Page ID# 1943-1949). It imposed a Life sentence on

Counts One and Four, and concurrent sentences of 360 months on Counts Two and

Three. (TR Sentencing, R. 194, Page ID# 1949). If Mr. McCall should ever be

released from prison, he was to be on supervised release for life. (TR Sentencing,

R. 194, Page ID# 1949). The district court asked, "Does either party have any

objection to the sentence just pronounced by the Court that has not been previously

12

raised?"  (TR Sentencing, R. 194, Page ID# 1952).  Mr. McCall responded, "No, sir."  (TR Sentencing, R. 194, Page ID# 1952).

The district court entered its Judgment on June 20, 2016. (Judgment, R. 182, Page ID# 1339).  This timely appeal followed. (Notice of Appeal, R. 184, Page ID# 1351).

## SUMMARY OF THE ARGUMENT

Knowledge that the child *will* be used for production of child pornography is an element of 18 U.S.C. § 2251A.  The government presented no proof that the McCalls knew child pornography would be produced at the time they agreed to transfer, and transferred custody, of T.G. to David Berry to travel to Myrtle Beach for a weekend.  Because the government failed to prove this element, Mr. McCall's conviction on Count One of the indictment should be vacated.

During Mr. McCall's trial, the government related each Count of his indictment to a single particular victim.  After he was convicted, the Presentence Report assigned three victims to each of three Counts of conviction.  Doing this raised Mr. McCall's Total Offense Level by one point, resulting in a guideline range of Life, rather than 360 months to life.  The district court was clearly erroneous when it accepted such a calculation and sentenced Mr. McCall based on that erroneous guideline.

## STANDARD OF REVIEW

This Court reviews *de novo* challenges to the sufficiency of the evidence against a defendant at trial. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). Viewing the evidence in the light most favorable to the prosecution, this Court asks "whether any rational trier of fact could have found the contested elements of the crime beyond a reasonable doubt." *Id.* (citing *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010)).

This Court reviews the district court's sentencing decisions for reasonableness, using a deferential abuse of discretion standard. *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007). A district court necessarily imposes a procedurally unreasonable sentence if it improperly calculates the advisory Guidelines range. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If procedural errors are not brought to the district court's attention upon asking the *Bostic*[6] question, this Court reviews those claims for plain error. *United States v. Judge*, 649 F.3d 453, 457 (6th Cir. 2011).

---

[6] *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).

# ARGUMENT

I. **Because Mr. McCall did not know for sure the child would be used for child pornography production when transported out of state, he cannot be guilty of violating 18 U.S.C. § 2251A, Count One of his indictment.**

Though it has been on the books in some form since 1988, the statute prohibiting the "Selling or buying of children," 18 U.S.C. § 2251A,[7] has not been frequently examined by the appellate courts.  The violation of § 2251A(a) (selling by a parent or guardian) has only been addressed by three Circuits,[8] and has yet to be addressed by the Sixth Circuit.  Of the eight Circuits that have Pattern or Model Jury Instructions available online, only the Seventh Circuit includes instructions for § 2251A.[9]

As applied to Mr. McCall, § 2251A is violated when

---

[7]  This statute should not be confused with 18 U.S.C. §2251(a), which is in the same Chapter but describes a similar, but different, offense.

[8]  Those Circuits are the Second, Fifth, and Ninth Circuits.  *United States v. O'Connor*, 650 F.3d 839 (2nd Cir. 2011); *United States v. Block*, 635 F.3d 721 (5th Cir. 2011); *United States v. LaBrecque*, 433 F. App'x 551 (9th Cir. 2011) (unpublished).  The Fourth and Eleventh Circuits have also addressed application of § 2251A(b), which concerns people *buying* children.  *United States v. Moser*, 235 F. App'x 138 (2007) (unpublished); *United States v. Buculei*, 262 F.3d 322 (2001); *United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010).

[9]  Available here: www.ca7.uscourts.gov/**Pattern_Jury**_Instr/**7th**_criminal_**jury**_instr.pdf  (last visited December 5, 2016) or by googling "seventh circuit pattern jury instructions" and clicking on the link for the .pdf file of Pattern Criminal Jury Instructions.

(a) Any parent, legal guardian, or other person having custody or control of a minor who sells or otherwise transfers custody or control of such minor, or offers to sell or otherwise transfer custody of such minor either –

> (1)  with the knowledge that, as a consequence of the sale or transfer, the minor will be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct; or

> (2)  with intent to promote either –

>> (A)  the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct; or

>> (B)  the rendering of assistance by the minor to any other person to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct

18 U.S.C. § 2251A(a).  In its effort to prove Mr. McCall guilty of violating § 2251A, the government attempted to show that

1.  Mr. McCall had custody or control over T.G.

2.  Mr. McCall sold/transferred T.G. *knowing* T.G. *would* be portrayed in child pornography, or to promote T.G.'s engaging in sexually explicit conduct *for the purpose of* producing a visual depiction of that conduct.

3.  T.G. traveled in interstate commerce (traveling from Tennessee, to Myrtle Beach, South Carolina).

*See* PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, p. 579 (2012 ed.).  The government proved Mr. McCall had custody or control over T.G. based on her testimony that he had raised her from a baby.  The government also

proved that T.G. traveled in interstate commerce based on her testimony regarding the weekend spent in Myrtle Beach, South Carolina. What the government failed to prove is that Mr. McCall knew, specifically, that David Berry would be taking sexually explicit still pictures or video of T.G. *on that trip*.[10]

Count One concerns Mr. McCall's knowledge of what would happen – not what *could* happen – during the single weekend-long trip to Myrtle Beach. Mr. McCall knew David Berry was having sex with T.G. – he even exhorted her to comply with Mr. Berry's demands for sex over five times. Mr. McCall knew David Berry sometimes took lewd pictures of T.G. But the statute requires that the sale or transfer be made with the "knowledge that" the minor "*would* be" portrayed in child pornography, or that the transfer is "*for the purpose of*" production of child pornography. § 2251(a)(1) & (a)(2).

"It is a basic precept of statutory construction that we should not construe statutes in a way that renders words or clauses superfluous." *United States v. Block*, 635 F.3d 721, 723-724 (5th Cir. 2011) (quoting *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 375 (5th Cir. 2009) (*en banc.*)). Removing the certainty of intent from § 2251A(a) would render whole phrases of the statute superfluous or

---

[10]  In contrast, Count Two concerns Mr. McCall's awareness of child pornography production over the period of a year and a half (February 1, 2011, to August 30, 2012) and with a much broader connection to interstate commerce. *See* 18 U.S.C. § 2251(a).

meaningless.  The government had two witnesses who could have testified as to the specific purpose of the trip to Myrtle Beach.  Connie McCall could have expanded on the discussion she claims to have heard between David Berry and Ronnie McCall about the trip.  T.G., who believed Connie McCall had arranged the trip, could have expanded on what her mother told her in preparation for the trip.  Yet the government did not – and perhaps could not – present such evidence.

Count One also charges that Mr. McCall and Connie McCall aided and abetted each other in pursuit of this criminal end.  Not only did the government fail to show Mr. McCall knew the trip was for the purpose of producing child pornography, it also failed to show that Connie McCall knew the trip was for the purpose of producing child pornography.  The government had Connie McCall on the witness stand.  She had already pled guilty to Count Two of the Indictment, which locked her in to a 15-year minimum and 30-year maximum sentence *before* the government filed a § 5K motion for substantial assistance.  Yet the government did not ask Connie McCall if the trip to Myrtle Beach was explicitly for child pornography production, or explicitly for sex, or if either she or Mr. McCall even asked or cared.  Respectfully, counsel suggests the government did not adduce this information because they could not.

The facts of Mr. McCall's case stand in stark contrast with those of the two other cases that have explored application of § 2251A(a).[11]

In *Block*, the defendant began a romantic relationship with Ms. Richards in which they discussed a mutual interest in the sexual exploitation of children. 635 F.3d at 722. Mr. Block discussed the couple having sex with Ms. Richards' daughters and making money selling the girls to other adult men. *Id*. He introduced Ms. Richards to a man seemingly interested in the sexual exploitation of children, who turned out to be an FBI informant. *Id*. Mr. Block and Ms. Richards both "negotiated a deal with [the informant] that would allow [the informant] to engage in *and photograph* his sexual conduct" with one of Ms. Richards' daughters. *Id*. (emphasis added). Mr. Block was convicted of aiding and abetting Ms. Richards in the violation of 18 U.S.C. § 2252A(a). *Id*.

In *United States v. O'Connor*, the defendant had been sexually abusing her daughter – and allowing others to sexually abuse her daughter in exchange for rent money – for years before one landlord, Mr. Sacco, added photography to the abuse. 650 F.3d 839, 844-846 (2d Cir. 2011). When her child complained to Ms. O'Connor about Mr. Sacco's abuse, Ms. O'Connor said it was "better than being homeless," implying that the abuse and photography were in exchange for rent. *Id*.

---

[11] The Ninth Circuit's opinion in *United States v. LaBrecque*, 433 F. App'x 551 (9th Cir. 2011) (unpublished) is so devoid of facts as to be indecipherable to any but the parties directly involved.

20

at 846.  The next time Mr. Sacco sexually abused and photographed the child, Ms.

O'Connor was present and an active participant, with each adult taking turns

photographing the other abusing the child.  *Id*.  Ms. O'Connor sent her child to be

abused by Mr. Sacco on several other occasions.  *Id*.

Unlike Mr. McCall's case, in *Block* and *O'Connor* the defendants were

actively, explicitly arranging to transfer a child for the production of child

pornography.  This knowledge and purpose are required by the statute.  Because

the government failed to present any evidence that Ronnie or Connie McCall knew

the Myrtle Beach trip was for the purpose of producing child pornography, no

rational trier of fact could have found that element beyond a reasonable doubt.

*Howard*, 621 F.3d at 459; *see, also, United States v. Sherer*, 770 F.3d 407, 411 (6th

Cir. 2014) (the record must be devoid of evidence pointing to guilt).

This Honorable Court should vacate Mr. McCall's conviction of Count One

of the Indictment, and remand his case back to district court for further

proceedings.

**II.    Mr. McCall's offense level was incorrectly calculated by assigning too
many victims to each of three offenses.**

In its response to Mr. McCall's motion for judgment of acquittal at the close

of government's evidence, the government clearly assigned one specific victim to

each of the four Counts brought against Mr. McCall.  (TR Trial Vol. II, R. 198,

Page ID# 2285, 2286).  However, the Presentence Report assigned three victims to each of the latter three Counts of conviction.  (PSR, R. 175, Page ID# 1265-1269). Using the Multiple Count Adjustments contained in U.S.S.G. § 3D1.4, such an allocation resulted in 8.5 "units" which, in turn, meant a five-point increase in Mr. McCall's Total Offense Level.  If each offense were assigned one victim, as the government did during the Rule 29 motion, Mr. McCall would have 3.5 "units" which would only cause a four-point increase in Mr. McCall's offense level.  This improper increase in offense level, as accepted by the district court, is a procedural error in miscalculating guidelines.  *Bolds*, 511 F.3d at 579.

Because Mr. McCall did not file a formal objection to the calculation of the Presentence Report, argue an objection at the start of his sentencing hearing, or raise it when the district court asked the *Bostic* question, this claim is reviewed for plain error.  *Judge*, 649 F.3d at 457.  In order to prevail, Mr. McCall must show that the district court 1) committed an error, "2) that was obvious or clear, 3) that affected the defendant's substantial rights, and 4) that affected the fairness, integrity, or public reputation of the proceedings."  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*).

A sentencing error that leads to a more severe sentence diminishes "the integrity and public reputation of the judicial system" and diminishes "the fairness of the criminal sentencing system."  *United States v. Doyle*, 711 F.3d 729, 736 (6th

22

Cir. 2013) (quoting *United States v. Inman*, 666 F.3d 1001, 1006 (6th Cir. 2012)). The one-point increase in Mr. McCall's Total Offense Level increased his advisory guideline range from "360 months to life" up to "Life." Should Mr. McCall prevail in his argument regarding his conviction of Count One, this error could mean an even more significant difference in Guidelines.

Spending more time in jail based on the influence of a judicial error in calculating guidelines affects Mr. McCall's substantial rights. This error directly impacted the evaluation of the deprivation of Mr. McCall's liberty.

The district court made an error that was obvious. The same judge listened to the government's argument on Mr. McCall's Rule 29 motion as ultimately sentenced Mr. McCall. The district court knew the government considered each Count to apply to one particular victim, and yet it allowed the probation office to assign three victims to each of three Counts of conviction.

Because the district court plainly erred in imposing a procedurally unreasonable sentence, this Honorable Court should vacate Mr. McCall's sentence and remand his case back to the district court for resentencing.

## CONCLUSION

Based on the foregoing arguments, Mr. McCall respectfully requests this Honorable Court to vacate his conviction on Count One of the Indictment, vacate his sentence, and remand his case to the district court for further proceedings.

Respectfully submitted:

Federal Defender Services of
Eastern Tennessee, Inc.

By:

 _s/ Laura E. Davis_____
Laura E. Davis
Assistant Federal Defender

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief has been served upon the appellee through operation of the Court of Appeals Electronic Filing System, and to Appellant Ronnie McCall, Register No. 46763-074, USP Tucson, with sufficient postage to carry the same to its destination.

Dated this 6th day of December, 2016.

_s/ Laura E. Davis_____
Laura E. Davis
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the requirements of the type-volume limitation of Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, as it contains 5,002 words, excluding the table of contents, table of citations, statement in support of oral argument, any addendum, and the certificates of counsel. Certification is based on the word count of the word-processing system used in preparing the McCall brief, Microsoft Word 2013.

*s/ Laura E. Davis*

Laura E. Davis

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

**UNITED STATES V. RONNIE McCALL**
**U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**
**DOCKET NO. 2:13-CR-92-02**

| Record Entry No. | Document | Page ID# Range |
|---|---|---|
| 3 | Indictment | 3 – 5 |
| 23 | Connie McCall Plea Agreement | 37 – 44 |
| 25 | Motion for Psychiatric Exam | 48 – 49 |
| 29 | Minute Entry, Connie McCall Guilty Plea | 57 |
| 113 | Joint Motion to Continue | 1068-1069 |
| 145 | Jury Verdict | 1187-1189 |
| 171 | Connie McCall Judgment | 1244-1249 |
| 175 | Presentence Report (sealed document) | 1257-1282 |
| 178 | Government Sentencing Memorandum | 1285-1288 |
| 182 | Judgment | 1339-1346 |
| 184 | Notice of Appeal | 1351-1352 |
| 194 | Transcript, Sentencing Hearing | 1934-1953 |
| 197 | Transcript, Jury Trial Volume I | 1975-2088 |
| 198 | Transcript, Jury Trial Volume II | 2084-2292 |
| 199 | Transcript, Jury Trial Volume III | 2293-2415 |