**Case No. 16-5929**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**RONNIE LEE MCCALL,**

**Defendant-Appellant.**

---

On appeal from the United States District Court
for the Eastern District of Tennessee

---

**BRIEF OF THE UNITED STATES**

---

Nancy Stallard Harr
United States Attorney
Eastern District of Tennessee

Helen C.T. Smith
Assistant United States Attorney
220 W. Depot St., Suite 423
Greeneville, Tennessee 37743
423-823-5020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE..............................................................1

    I.    Unable to simultaneously support his family and his drug habit,
          Ronnie McCall arranges for his stepdaughter and two of his biological
          daughters to engage in sexual activity and pose for child pornography.......2

    II.    Ronnie and Connie McCall sell their daughters to Ronald David Berry
          for him to produce child pornography and engage in sexual activity...........3

    III.   Ronnie and Connie McCall flee after the sexual abuse is discovered..........7

    IV.   The jury convicts Ronnie McCall as charged on all four counts................10

    V.    Ronnie McCall is sentenced to life imprisonment, within the applicable
          guideline range. ........................................................11

SUMMARY OF ARGUMENT ...........................................................14

ARGUMENT ........................................................................15

    I.    The evidence was sufficient for McCall's conviction on Count One.........15

        A.   Standard of Review ...........................................................15

        B.   McCall was charged both as a principal and as an aider-and-abettor
           and could thus be properly convicted under either theory. .................16

        C.   Ample evidence established McCall's knowledge, and he does not
           dispute the sufficiency of the evidence as to the other elements. .......17

II.    McCall's sentence of life imprisonment is procedurally reasonable..........23

    A.    Standard of Review ...............................................................23

    B.    McCall has not established any plain error in the calculation of his
        guidelines range.....................................................................24

CONCLUSION ...................................................................................27

CERTIFICATE OF SERVICE ...............................................................28

CERTIFICATION PURSUANT TO RULE 32(a)(7)(B)........................................28

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............29

# TABLE OF AUTHORITIES

<u>CASES</u>

*Coleman v. Johnson*, 132 S. Ct. 2060 (2012) ..........................................................18

*Ford v. Ford*, 371 U.S. 187 (1962) ...........................................................................21

*Gall v. United States*, 552 U.S. 38 (2007) ....................................................... 23, 24

*Holloway v. United States*, 526 U.S. 1 (1999) .........................................................21

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................................15

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) .......................................................21

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006) ...........................................15

*United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005) ...........................................15

*United States v. Block*, 635 F.3d 721 (5th Cir. 2011) ..............................................22

*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004.) ............................................23

*United States v. Brown*, 147 F.3d 477 (6th Cir. 1998) .............................................16

*United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006) .......................................18

*United States v. Curry*, 536 F.3d 571 (6th Cir. 2008) .............................................24

*United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010) .........................................21

*United States v. Frost*, 914 F.2d 756 (6th Cir. 1990) ..............................................16

*United States v. Garcia*, 758 F.3d 714 (6th Cir. 2014) ...........................................17

*United States v. Graham*, 622 F.3d 445 (6th Cir. 2010) ..........................................15

*United States v. Houston*, 529 F.3d 743 (6th Cir. 2008) .........................................24

*United States v. Johnson*, 627 F.3d 578 (6th Cir. 2010)..........................................24

*United States v. King*, 840 F.2d 1276 (6th Cir. 1998) ..............................................21

*United States v. McDowell,* 498 F.3d 308 (6th Cir. 2007) ......................................15

*United States v. O'Connor*, 650 F.3d 839 (2d Cir. 2011)..........................................22

*United States v. Peters*, 15 F.3d 540 (6th Cir. 1994)................................................15

*United States v. Scruggs*, 549 F.2d 1097 (6th Cir. 1977) ........................................18

*United States v. Stewart*, 628 F.3d 246 (6th Cir. 2010)..........................................16

*United States v. Woodard*, 638 F.3d 506 (6th Cir. 2011) .......................................24

STATUTES

18 U.S.C. § 2 ..................................................................................................17

18 U.S.C. § 2251(b) ........................................................................................1

18 U.S.C. § 2251A ................................................................................. 1, 16, 21, 22

18 U.S.C. § 2256(7) .......................................................................................22

18 U.S.C. § 2422(b) .......................................................................................2

18 U.S.C. § 3553(a) ................................................................................. 12, 23

OTHER AUTHORITIES

U.S.S.G. § 1B1.1(H) .......................................................................................26

U.S.S.G. § 1B1.3.............................................................................................26

U.S.S.G. § 1B1.3(a)(1).....................................................................................26

U.S.S.G. § 2G2.1.............................................................................................11

U.S.S.G. § 3D1.4...................................................................................................12

## STATEMENT REGARDING ORAL ARGUMENT

The United States submits that the issues in this case are fully presented in the briefs and in the record, and that this Court's decisional process is unlikely to be aided by oral argument. Accordingly, oral argument is not requested.

## STATEMENT OF THE ISSUES

I.      Whether, viewed in the light most favorable to the jury verdict, the evidence was sufficient to prove that McCall transferred a child to another with knowledge that, as a consequence of the transfer, that child would be portrayed in child pornography.

II.     Whether McCall's sentence is procedurally reasonable.

## STATEMENT OF THE CASE

For more than one year, Ronnie McCall and his wife Connie repeatedly arranged for three of their daughters—initially aged 12, 14, and 16 years old—to be photographed naked and sexually assaulted by a neighbor in exchange for cash.

A federal grand jury charged the McCalls with selling a child by a parent or guardian for purposes of producing child pornography, in violation of 18 U.S.C. § 2251A (Count One); producing child pornography, in violation of 18 U.S.C. § 2251(a) (Count Two); producing child pornography by a parent, in violation of 18 U.S.C. § 2251(b) (Count Three); and using a facility of interstate commerce to coerce a child to engage in illegal sexual activity, in violation of 18 U.S.C.

§ 2422(b) (Count Four).[1]  (R. 3, Indictment, PageID# 3-5.)  Connie McCall

pleaded guilty to Count Three via a written plea agreement, and, after receiving

a downward departure for her substantial assistance to the United States, was

ultimately sentenced to 216 months' imprisonment.  (R. 23, Plea Agreement,

PageID# 37-44; R. 198, Trial Tr. at PageID# 2229-2231; R. 171, Judgment,

PageID# 1244-1249.)  Ronnie McCall proceeded to trial in January 2016 and

was convicted as charged.  (R. 145, Jury Verdict, PageID# 1187-1189.)  He was

sentenced to concurrent terms of life imprisonment for Counts One and Four

and 360 months' imprisonment for Counts Two and Three.  (R. 182, Judgment,

PageID# 1339-1346.)  He timely appealed.  (R. 184, Notice of Appeal, PageID#

1351-1352.)

## I.    Unable to simultaneously support his family and his drug habit, Ronnie McCall arranges for his stepdaughter and two of his biological daughters to engage in sexual activity and pose for child pornography.

Ronnie and Connie McCall began living together in approximately 1995;

Connie already had one young daughter, born in November 1994 ("Child #1"), and

together the couple had three more daughters, who were born in December 1996

---

[1] For each count, both McCalls were charged as principals and as aiders and abettors.  (R. 3, Indictment, PageID# 3-5; R. 197, Trial Tr. at PageID# 1993-1996; R. 199, Trial Tr. at PageID# 2396-2409.)  As for the man who photographed the children naked and engaged in sexual activity with them, he committed suicide before he could be prosecuted for his offenses.  (R. 175, (Sealed) Presentence Report at ¶ 8, PageID# 1252; R. 197, Trial Tr. at PageID# 2048.)

("Child #2"), October 1999 ("Child #3"), and November 2005 ("Child #4"), respectively.  (R. 197, Trial Tr. at PageID# 2025; R. 198, Trial Tr. at PageID# 2186-2187.)  Ronnie and Connie McCall married in 2005.  (R. 198, Trial Tr. at PageID# 2187.)

Over time, Ronnie and Connie McCall became addicted to drugs and, in turn, failed to properly care for their daughters.  (R. 198, Trial Tr. at PageID# 2119-2121, 2165, 2193-2196.)  Ronnie McCall exhibited unpredictable behavior and directed anger and violence at his wife and children.  (*Id*. at PageID# 2121-2122, 2196-2198, 2238, 2251.)  He already controlled every aspect of the family's existence, restricting their funds, travel, food, and telephone access as he deemed appropriate.  (*Id*. at PageID# 2120, 2122, 2165, 2189-2190, 2203-2205, 2214.)

Ronnie McCall owned and operated a landscaping business, with the assistance of Connie and two of the children, but he failed to earn sufficient income in 2011 and 2012 to pay for the family's expenses and support his growing drug habit.  (*Id*. at PageID# 2140, 2187-2188, 2265-66.)  In need of money, he induced his children to earn money by having sex with others and making child pornography.  (*Id*. at PageID# 2190-2191, 2210-2211.)

## II.    Ronnie and Connie McCall sell their daughters to Ronald David Berry for him to produce child pornography and engage in sexual activity.

Ronald David Berry operated a convenience store in Limestone, Tennessee, and lived in an apartment over the store.  (R. 198, Trial Tr. at PageID# 2123.)

Ronnie McCall periodically cashed checks at Berry's store, and Connie McCall worked there temporarily. (R. 197, Trial Tr. at PageID# 2049.)

In January 2011, Berry asked the McCalls to let him photograph Child #1 and Child #2 at his apartment; when they arrived, Berry immediately clarified that he intended for the children to be naked in some of the photographs. (R. 198, Trial Tr. at PageID# 2201.) Ronnie McCall urged Connie McCall to acquiesce, saying, "the girls are old enough to make up their own minds." (*Id*. at PageID# 2201, 2124-2125.) Berry provided lingerie for the two girls to wear yet also asked them both to pose topless for him; when Child #2 did so, Berry gave her $50, which she immediately gave to Ronnie McCall. (*Id*. at PageID# 2201-2202.) Connie McCall was present, and Ronnie McCall was in an adjacent room, while Berry photographed Child #1 and Child #2; afterwards, both Ronnie and Connie McCall talked with Berry. (*Id*. at PageID# 2124-2126.) When the family left Berry's apartment, Ronnie told Child #1 that she "should not tell anybody [what they had just done] because it could like hurt the family and everything." (*Id*. at PageID# 2126.)

Over the next eighteen months, Ronnie McCall periodically drove Child #1, Child #2, and Child #3 to Berry's home. (R. 198, Trial Tr. at PageID# 2123.) During these visits, Berry not only made child pornography of all three girls, but also raped them. Berry began his victimization of Child #1 with the first photo

4

session in January 2011 and quickly progressed to sexual intercourse with the

child.  On approximately 40 occasions in 2011, Ronnie McCall transported

Child #1 to Berry's apartment for sexual activity and/or the production of child

pornography.  (*Id*. at PageID# 2127, 2129, 2138.)  Berry typically sent a text

message to Ronnie or Connie McCall saying he wanted sex with Child #1 and

Connie would tell Child #1, in Ronnie's hearing, to get ready to see Berry.  (*Id*. at

PageID# 2128.)  Ronnie McCall would transport Child #1 to Berry's apartment

and talk to Berry, asserting his own possessory interest over the children.  (*Id*. at

PageID# 2202.)

Berry paid Child #1 between $200 and $800 for each session of sexual

activity and child pornography, depending on what she did and how long she

stayed, and Child #1 immediately turned that money over to Ronnie and Connie

McCall.  (R. 198, Trial Tr. at PageID# 2129.)  Child #1 complained about having

sex with Berry and making child pornography, saying that it "made her hurt in [her

private] places," and left her feeling "dirty," "uncomfortable," and "disgusted."

(*Id*. at PageID# 2131, 2139.)  In response, Ronnie McCall pleaded with Child #1

to continue because he needed Berry's money, also threatening her that, if she told

anyone about Berry's behavior, the "family would be broken apart and [they

would] get in really, really bad trouble."  (*Id*. at PageID# 2130, 2139.)  To

minimize Child #1's resistance, Ronnie McCall also supplied her with alcohol and drugs.  (*Id*. at PageID# 2121, 2129, 2139-2140, 2209-2210.)

In August 2011, Berry requested and received permission from Ronnie and Connie McCall to take Child #1 with him to Myrtle Beach, South Carolina, for a weekend, during which he would engage in sexual activity and take pornographic photographs of Child #1.  (R. 198, Trial Tr. at PageID# 2135, 2137, 2140-2141, 2207-2208.)  One day before the trip with Child #1, Berry gave Ronnie McCall an envelope containing cash; Berry also paid $800 to Child #1, who promptly turned the money over to Ronnie McCall.  (*Id*. at PageID# 2134, 2137, 2206-2207.)

Berry also sexually assaulted Child #2 and made child pornography of her on numerous occasions; one witness estimated that it occurred almost every other weekend, during the same eighteen-month period as the abuse of Child #1. (R. 198, Trial Tr. at PageID# 2212-2213, 2215.)

Beginning in January or February 2012, Ronnie McCall also took Child #3, then only 12 years old, to Berry, explicitly telling Child #3 in advance that Berry would "take naked photos of [her]" because the family needed money to pay their rent.[2]  (R. 198, Trial Tr. at PageID# 2166-2168.)  During the first session, Child #3 was required to perform oral sex on Berry, who photographed the sexual act.  (*Id.*

---

[2] In February 2012, the McCall family moved from Limestone, Tennessee, to an apartment in Johnson City, Tennessee.  (R. 198, Trial Tr. at PageID# 2144, 2187, 2191, 2265.)

at PageID# 2168.)  On another occasion, Ronnie McCall took Child #3, along with Child #2, to engage in sexual activity with Berry, and Child #3 gave the money she received from Berry to Connie McCall.  (*Id*. at PageID# 2170.)  After the first time she was raped by Berry, Child #3 specifically complained to Ronnie McCall, who said, "That's what she had went for."  (R. 198, Trial Tr. at PageID# 2216.)

### III.    Ronnie and Connie McCall flee after the sexual abuse is discovered.

In July 2012, an investigator with the Tennessee Office of Child Safety visited the McCall home to investigate reports that the children lacked parental supervision and were being exposed to controlled substances.  (R. 197, Trial Tr. at PageID# 2012-2013, 2015.)  During that home visit, Connie McCall tested positive for marijuana, and the investigator concluded that state intervention was necessary.  (*Id*. at PageID# 2014.)  On July 18, 2012, all four children were removed from the McCall residence and placed with a foster family.  (*Id*. at PageID# 2017-2021, 2025.)  Investigators also found controlled substances and drug paraphernalia in the bedroom shared by Ronnie and Connie McCall.  (*Id*. at PageID# 2021-2024; R. 198, Trial Tr. at PageID# 2146-2147.)

Ronnie and Connie McCall were arrested and charged with felony child neglect.  (R. 198, Trial Tr. at PageID# 2106.)  Ronnie McCall was released on bond on August 6, 2012, and he met with Berry that same day and obtained $1,000

from him; Connie McCall, by contrast, did not post bond until November 2012. (*Id*. at PageID# 2114, 2216-2218.)

In the meantime, Child #1 reported Berry's sexual abuse and production of child pornography to her foster mother, who notified law enforcement authorities. (R. 198, Trial Tr. at PageID# 2145.)  After investigators interviewed Child #1, Child #2, and Child #3, they obtained and executed a search warrant for Berry's residence on August 30, 2012.  (R. 197, Trial Tr. at PageID# 2031-2032.)  Among other items, they found two mobile telephones, a personal computer, and a bag containing a camera, condoms, and personal lubricants.  (*Id*. at PageID# 2032-2044, 2046-2047.)  The computer contained more than 300 images of child pornography of Child #1 and Child #2.  (*Id*. at PageID# 2060-2066.)  Berry committed suicide the next day.  (*Id*. at PageID# 2048.)

On August 31, 2012, Connie McCall confessed to an FBI agent her role in the sexual abuse of the children, also inculpating Ronnie McCall.  (R. 198, Trial Tr. at PageID# 2218-2219.)  When Connie later told Ronnie McCall that the FBI was investigating the child pornography and sexual abuse, and that she had already confessed her involvement, Ronnie McCall became very upset and angry with her: "He told me to not to tell the FBI nothing.  He told me not to talk to them no more. He said that they would take advantage of me."  (*Id*. at PageID# 2219, 2221;

8

*accord id*. at PageID# 2227 (testimony that Ronnie McCall explicitly directed Connie "not to talk" to the FBI).)

In November 2012, Ronnie McCall posted bond for Connie's release on the state felony neglect charges, and the McCalls thereafter regularly discussed the federal child pornography investigation.  (R. 198, Trial Tr. at PageID# 2221-2223.) Ronnie McCall explicitly told Connie not to disclose to anyone that he had driven the children to Berry's residence.  (*Id*. at PageID# 2222.)

The McCalls failed to appear for their preliminary hearings in state court on the felony neglect charges, which had been scheduled for March 4, 2013.  (R. 198, Trial Tr. at PageID# 2113-2114.)  Instead, they both had significantly changed their appearances,[3] assumed false names, and fled to Florida.  (*Id*. at PageID# 2223-2226.)  Ronnie McCall also destroyed the mobile telephones with which he had communicated with Berry, telling Connie that the phones could "get him in trouble because of the text messages and stuff."  (*Id*. at PageID# 2225-2226.)  On March 13, 2013, while traveling from Florida to Canada, the McCalls were arrested by a bail bondsman, their state bonds having been revoked upon their failure to appear for court.  (*Id*. at PageID# 2271-2273.)  Ronnie McCall resisted arrest and unsuccessfully attempted to flee.  (*Id*. at PageID# 2273.)

---

[3] The bail bondsman who later apprehended the McCalls did not initially recognize them, because they had so significantly changed their appearances since their initial arrests in July 2012.  (R. 198, Trial Tr. at PageID# 2273-2274.)

9

**IV.    The jury convicts Ronnie McCall as charged on all four counts.**

Among other evidence at trial, the United States presented testimony from Connie McCall, Child #1, and Child #3, as well as images taken by Berry of Child #1 and Child #2 engaged in sexually explicit conduct.  (R. 143, Exhibit/Witness List, PageID# 1182-1185; R. 197, Trial Tr. at PageID# 2081-2083; R. 198, Trial Tr. at PageID# 2141-2144.)  Connie testified that she overheard Ronnie McCall "talk with David Berry about taking the girls for sex and photographs" and she saw Ronnie McCall send text messages to Berry regarding sex and child pornography. (R. 198, Trial Tr. at PageID# 2229.)  She testified that she "and Ronnie knew the girls was going to David's, . . . knew what the girls was doing [and] got paid for doing," and that they "g[a]ve the money to Ronnie."  (*Id*. at PageID# 2248-2249.) The United States also presented telephone records and text messages connecting the McCalls and Berry; one such text message from Berry to Connie McCall in July 2012 used slang to describe Berry's desire to engage in sexual intercourse with Child #1 and Child #2.  (R. 197, Trial Tr. at PageID# 2072-2080.)

During closing argument, the United States clarified for the jury that Count One pertained to Berry taking Child #1 to Myrtle Beach, South Carolina, in August 2011.  (R. 199, Trial Tr. at PageID# 2350.)  Counts Two and Three both related to the production of child pornography in Tennessee; Count Two related to Child #1 and Count Three related to Child #2.  (*Id*. at PageID# 2350-2353.)  Finally, Count

Four pertained to the inducement of Child #3 to engage in illegal sexual activity. (*Id.* at PageID# 2353-2354.)

After unsuccessfully seeking a judgment of acquittal (*see generally* R. 198, Trial Tr. at PageID# 2284-2288), Ronnie McCall was convicted as charged. (R. 199, Trial Tr. at PageID# 2414; R. 145, Jury Verdict, PageID# 1187-1189.)

## V.     Ronnie McCall is sentenced to life imprisonment, within the applicable guideline range.

The probation officer calculated Ronnie McCall's advisory guideline range as life imprisonment, based on a total offense level of 43 and criminal history category of II.  (*See generally* R. 174, (Sealed) Presentence Report ("PSR"), PageID# 1257-1282.)  Specifically, the probation officer noted that offenses under U.S.S.G. § 2G2.1 are "specifically excluded from the grouping rules," and that, where an offense "involved the exploitation of more than one minor," the guideline range is calculated as if the exploitation of each minor had been contained in a separate count of conviction.  (*Id.* at ¶ 18, PageID# 1264.)  The probation officer thereafter calculated a base level of 38 for Count One, regarding the selling of Child #1 to Berry for the purpose of producing child pornography in Myrtle Beach; an adjusted offense level of 38 as each of the three children for Counts Two and Three, regarding the production of child pornography; and an adjusted offense level of 32 as to each of the three children for Count Four, regarding the use of a facility of interstate commerce to coerce a child to engage in illegal sexual activity.

11

(*Id*. at ¶¶ 19-92, PageID# 1264-1269.)  Under U.S.S.G. § 3D1.4, those offense

levels yielded 8.5 "units" and thus required a five-level increase from the highest

individual offense level, resulting in a total offense level of 43.  (*Id*. at ¶¶ 92-98,

PageID# 1269-1270.)  The presentence report also stated that McCall was subject

to the following statutorily mandated minimum terms of imprisonment:  30 years

for Count One, 15 years each for Counts Two and Three, and 10 years for Count

Four.  (*Id*. at ¶ 134, PageID# 1277.)

Neither party filed any objections to the guideline range calculations in the

presentence report.  (R. 194, Sent. Tr. at PageID# 1936-1937.)  Additionally,

during the sentencing hearing, Ronnie McCall declined to personally allocute and

offered no argument in support of a particular sentence.  (*Id*. at PageID# 1942.)

The district court considered the advisory guideline range and the factors set

forth in 18 U.S.C. § 3553(a), concluding that a life sentence was sufficient, but not

greater than necessary, to achieve those factors.  With regard to the seriousness of

the offenses, the district court said that, "in all [its] 36 years of practice, [it had]

never encountered a case with facts as horrible as these" and that it could not "even

begin to understand what [would have] motivate[d] a parent to sell a child into

sexual slavery and to the kind of horrible abuse that these children experienced."

(R. 194, Sent. Tr. at PageID# 1944-1945.)  The court thus concluded that, "even if

the [advisory guideline] range were something less than life[,] . . . the seriousness of the offense alone would justify a life sentence in this case." (*Id.*)

The district court discussed the need to protect the public and found that specific and general deterrence were important factors, given McCall's unrepentant attitude and unwillingness to acknowledge the wrongfulness of his conduct. (*Id.* at PageID# 1945-1947.) In the end, the court found no mitigating factors and thus imposed a within-guidelines aggregate sentence of life imprisonment. (*Id.* at PageID# 1948-1949.) When the district court asked whether either party had any objection to that sentence, Ronnie McCall, through counsel, said he did not. (*Id.* at PageID# 1952.)

## SUMMARY OF ARGUMENT

The evidence amply supported the jury's guilty verdict on Count One.[4] When properly viewed in the light most favorable to the jury verdict, the evidence and reasonable inferences from it enabled a rational juror to conclude that McCall possessed the requisite knowledge that, when he agreed for Berry to take Child #1 to Myrtle Beach, South Carolina, for a weekend, and accepted cash from Berry for that purpose, McCall knew Berry intended to produce sexually explicit images— *i.e.*, child pornography—of Child #1. Accordingly, the verdict should be affirmed.

McCall has not established any plain error in the calculation of his advisory guideline range. Even if he could show that the multiple-count grouping provision was wrongly applied to increase his offense level by one extra level, his substantial rights were not affected: the district court specifically stated that, regardless of the applicable guideline range, a sentence of life imprisonment was necessary to reflect the seriousness of McCall's offenses. That sentence should be affirmed.

---

[4] McCall does not dispute the sufficiency of the evidence as to the other counts of conviction.

# ARGUMENT

## I.     The evidence was sufficient for McCall's conviction on Count One.

### A.     Standard of Review

This Court reviews the sufficiency of the evidence for a conviction *de novo*. *United States v. McDowell,* 498 F.3d 308, 312 (6th Cir. 2007).  Evidence is sufficient to support a criminal conviction if, "after viewing [it] in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  There is a "strong presumption in favor of sustaining a jury conviction," *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994), and this Court will not reverse a conviction unless the defendant meets the "very heavy burden," *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006), of showing that the record, as a whole, lacks substantial and competent evidence, whether direct or wholly circumstantial.  *United States v. Barnett*, 398 F.3d 516, 622 (6th Cir. 2005).  In making that determination, the Court does not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury," *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010), but rather "gives the prosecution the benefit of all reasonable inferences from the testimony."  *Abboud*, 438 F.3d at 589.  "Circumstantial evidence alone is sufficient to sustain a conviction, and such evidence need not remove every reasonable

hypothesis except that of guilt." *United States v. Brown*, 147 F.3d 477, 489 (6th Cir. 1998) (internal citation and quotation marks omitted). Indeed, if believed by the factfinder, "even the uncorroborated testimony of an accomplice may support a conviction." *United States v. Stewart*, 628 F.3d 246, 255 (6th Cir. 2010); *accord United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990).

      B.    <u>McCall was charged both as a principal and as an aider-and-abettor and could thus be properly convicted under either theory.</u>

To prove the violation of 18 U.S.C. § 2251A charged in Count One, the United States needed to prove (1) that McCall was a parent, legal guardian, or other person having custody or control of a minor; (2) that he transferred custody or control of such minor with knowledge that as a consequence of the transfer the minor would be portrayed in a visual depiction engaging in sexually explicit conduct; and (3) that in the course of this transfer of custody and portrayal of the minor in a visual depiction engaging in sexually explicit conduct, the minor was transported in and affecting interstate commerce. *See* 18 U.S.C. § 2251A.

Because McCall was also charged with aiding and abetting Connie McCall in the commission of the offense, he could also have been convicted upon proof (1) that Connie McCall committed the crime of transferring custody or control of a minor by a parent with the knowledge that the child will be portrayed in a visual depiction engaging in sexually explicit conduct; (2) that Ronnie McCall helped

16

Connie commit that crime; and (3) that Ronnie McCall intended to help Connie commit the crime. *See* 18 U.S.C. § 2.

    C.    <u>Ample evidence established McCall's knowledge, and he does not dispute the sufficiency of the evidence as to the other elements.</u>

McCall concedes that he had custody or control over Child #1, and that Child #1 traveled in interstate commerce when Berry took her to Myrtle Beach, South Carolina; he claims only that the government allegedly failed to prove his specific knowledge that "Berry would be taking sexually explicit pictures or video of [Child #1] *on that trip*." (Doc. 17, Defendant Brief at 17-18 (emphasis in original).) He seems to argue that he knew only that child pornography *could*, rather than *would*, be produced. (*Id*. at 18.) And he faults the government for not eliciting additional testimony from certain witnesses. (*Id*. at 19.)

The sufficiency of the evidence is determined from the totality of the evidence actually presented; there is "no single hallmark of sufficiency," and "neither the presence nor the absence of any particular fact [is] dispositive." *United States v. Garcia*, 758 F.3d 714, 718-19 (6th Cir. 2014) (affirming a conviction based on "circumstantial evidence and a chain of inferences"). This Court "looks at what was presented, not what was not presented" because the question is not whether the government "might have presented a more convincing case," but whether it "presented a [legally] sufficient one." *Id*. at 722. Here, the

totality of the evidence was more than sufficient for a rational juror to conclude, beyond a reasonable doubt, that the defendant was guilty as charged.

Knowledge is a mental state often proven by circumstantial evidence and inferences based on what an actor said or did at the time; it is rarely proven by direct evidence. *United States v. Scruggs*, 549 F.2d 1097, 1104 (6th Cir. 1977). And the jury has "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (internal citation and quotation marks omitted). McCall's protracted pattern of selling his daughters for sex and child pornography is highly probative of his intent and knowledge. *See United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006) (affirming convictions for child sexual exploitation and rejecting sufficiency challenge to intent element where Chambers cultivated a relationship with a minor over a period of several months and then threatened the minor and his family with physical injury if the minor did not engage in sex with him).

Over an eighteen-month period, Ronnie McCall arranged and participated in a scheme whereby he obtained cash in exchange for Berry engaging in sexual intercourse with, and producing child pornography depicting, McCall's daughters. Among other things, McCall controlled his family with threats of physical violence and angry outbursts (R. 198, Trail Tr. at PageID# 2196-2197); McCall operated the

family's only working vehicle and used it to transport a child to Berry's residence on forty separate occasions (*id*. at PageID# 2123, 2127-2129, 2192); McCall communicated with Berry via text messages to a mobile telephone which McCall alone controlled (*id*. at PageID# 2228-2229); McCall personally participated in the initial negotiations during which Berry sought permission to photograph the minor girls naked (*id*. at PageID# 2124-2125, 2140, 2199-2201); and McCall demanded and obtained the cash which Berry paid the minors (*id*. at PageID# 2121, 2129, 2189-2190, 2211-2212). McCall was overheard negotiating fees with Berry by phone by saying, for example, "that ain't worth bringing them up there." (*Id*. at PageID# 2205.) McCall told Child #1 not to tell anyone about him taking her to Berry (*id*. at PageID# 2126-2127) and he threatened the children with permanent separation from each other if they reported Berry's sexual abuse and production of child pornography (*id*. at PageID# 2173, 2180, 2197). Taken together, those facts amply demonstrated McCall's knowledge—and consciousness of guilt—that his children were the subject of child pornography created by Berry. When Child #1 complained to McCall about the sex and pornography with Berry, McCall begged her to continue so the family could pay its bills; McCall also plied her with drugs and alcohol. (*Id*. at PageID# 2121, 2130, 2139.)

In August 2011, Berry asked McCall for permission to take Child #1—then sixteen years old—to Myrtle Beach, South Carolina, to have sex with her and to

19

take more naked photographs of her. (R. 197, Trial Tr. at PageID# 2025; R. 198, Trial Tr. at PageID# 2206.) McCall agreed and directed Connie McCall to make sure Child #1 was ready; Child #1 testified at trial that, when Connie McCall told her that she would be spending the weekend with Berry, McCall was also present in the room. (R. 198, Trial Tr. at PageID# 2135, 2206.) Berry paid McCall cash in a white envelope beforehand, and both McCall and Connie McCall were present when Berry picked up Child #1. (*Id*. at PageID# 2206-2207.) Berry also paid $800 to Child #1, who turned that money over to McCall. (*Id*. at PageID# 2137.) Connie McCall testified that she and McCall both knew that Berry intended to have sex with Child #1 in Myrtle Beach and to make photographs of Child #1 engaging in sexually explicit conduct. (*Id*. at PageID# 2248-2249.) Berry did, in fact, produce images of child pornography involving Child #1 while in Myrtle Beach. (*Id*. at PageID# 2143, 2262; R. 197, Trial Tr. at PageID# 1982.)

In early 2012, McCall directed Child #3, then twelve years old, that he was taking her to Berry for the purpose of Berry taking photographs of her. (R. 198, Trial Tr. at PageID# 2167.) When Child #3 later complained to McCall that Berry had raped her, McCall responded, "It's not rape; it's what you were there to do." (*Id*. at PageID# 2168.)

Given the extensive evidence that Berry's sole interest in the children was to take naked or sexually explicit photographs of them and engage in sexual activity

20

with them, and that McCall had repeatedly delivered the children to Berry for that purpose in exchange for cash, the jury could also reasonably infer that, when Berry sought and obtained McCall's permission to take Child #1 across state lines to Myrtle Beach for a weekend, in exchange for an envelope full of cash, McCall necessarily knew the trip was for the purpose of producing child pornography, *i.e.*, that "as a consequence" of transferring custody of Child #1 to Berry for that time, Child #1 would be portrayed in one or more visual depictions of sexually explicit conduct. Such knowledge satisfies the requirements of 18 U.S.C. § 2251A.

It is well established that statutory language is interpreted "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). "In interpreting the statute at issue, we consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999). The statute at issue here, 18 U.S.C. § 2251A, was enacted as part of a comprehensive scheme to eradicate the sexual exploitation of children and should thus be interpreted broadly. *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). Indeed, the "law views [a] child as an individual with the dignity and humanity of other individuals, not as property." *United States v. King*, 840 F.2d 1276, 1283 (6th Cir. 1998) (quoting *Ford v. Ford*, 371 U.S. 187, 193 (1962)).

Contrary to McCall's suggestion, a conviction under 18 U.S.C. § 2251A does not require direct evidence that a defendant actively or explicitly arranged for child pornography to be produced.  (Doc. 17, Defendant's Brief at 20-21.)  That such evidence may have been present in *United States v. Block*, 635 F.3d 721 (5th Cir. 2011), and *United States v. O'Connor*, 650 F.3d 839 (2d Cir. 2011), does not mean it is statutorily required.  Block was convicted of violating § 2251A based on his agreement to sell the sexual services of his girlfriend's five-year-old daughter to an undercover law enforcement officer; he unsuccessfully challenged that conviction by arguing that his custody and control over the child was not coextensive with full and permanent parental authority.  *Block*, 635 F.3d at 723-24 (holding that Block's interpretation of the statute "would delete the definition of custody and control in 18 U.S.C. § 2256(7)").  O'Connor sexually abused her minor daughter for years and, among other things, also allowed her landlord Dean Sacco to sexually abuse and make child pornography of the girl.  *O'Connor*, 650 F.3d at 844-47.  On one occasion, O'Connor and Sacco took turns sexually abusing and photographing the child, for which O'Connor was ultimately convicted of violating § 2251A.  *Id.*  Like McCall, O'Connor disputed the sufficiency of the evidence of her knowledge; the Second Circuit flatly rejected the challenge, finding that the jury could credit the victim's testimony about how the abuse

occurred and to infer the requisite knowledge because O'Connor personally participated in the abuse and production of child pornography. *Id*. at 856.

In this case, the totality of the evidence presented to the jury and the reasonable inferences from it led to one inescapable conclusion:  in exchange for cash, McCall and Connie McCall agreed for Berry to take Child #1 to Myrtle Beach to engage in sexual activity and produce child pornography.  McCall's conviction on Count One should be affirmed.

## II.    McCall's sentence of life imprisonment is procedurally reasonable.

### A.    Standard of Review

This Court ordinarily reviews a defendant's sentence for procedural and substantive reasonableness under "a deferential abuse of discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).  For the procedural prong of that analysis, this Court must "ensure that the district court committed no significant procedural error," *e.g.,* by failing to properly calculate the guidelines range, treating the range as mandatory, failing to consider the 18 U.S.C. § 3553(a) sentencing factors, selecting the sentence based upon clearly erroneous facts, or by failing to adequately explain the chosen sentence. *Id*. at 51.

But where, as here, the defendant does not specifically object to his sentence when given an opportunity to do so, the procedural reasonableness of the sentence is reviewed only for plain error. *United States v. Bostic*, 371 F.3d 865, 872-73 (6th

Cir. 2004.) To establish plain error, a defendant must show (1) an error; (2) that was obvious or clear; (3) that affected his substantial rights; and (4) that affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010).

Ordinarily, this Court also considers "the substantive reasonableness of the sentence in light of the totality of the circumstances, giving 'due deference' to the sentencing judge," *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008) (citing and quoting *Gall*, 552 U.S. at 51-52), but McCall has not even alleged, much less established, that his sentence was substantively unreasonable. *See United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011) (recognizing that "the defendant shoulders the burden of showing substantive unreasonableness"). Moreover, a within-guidelines sentence is afforded a rebuttable presumption of reasonableness. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

B.    McCall has not established any plain error in the calculation of his
guidelines range.

McCall seems to argue that, because the undersigned prosecutor told the jury that each count of conviction referred to a single victim, the district court erred by applying the multiple-count grouping guidelines in a manner that suggested three separate minor victims – Child #1, Child #2, and Child #3 – as to the conduct criminalized in Counts Two through Four. (Doc. 17, Defendant's Brief at 21-23.) McCall acknowledges that he did not object to the guidelines calculations and that

24

this alleged error, at worst, increased his guideline range by one level, *i.e.*, from a range of 360 months to life imprisonment to a range of life imprisonment. (*Id*.) He then assumes, with little argument in support, that the four prongs of the plain-error standard are necessarily satisfied where a sentencing error "leads to a more severe sentence." (*Id*. at 22.) Significantly, however, McCall cannot show that his sentence was rendered more severe by the alleged error about which he complains. During sentencing, the district court explicitly stated that the seriousness of the offense conduct, standing alone, warranted a term of life imprisonment, "even if the [advisory guideline] range were something less than life." (R. 194, Sent. Tr. at PageID# 1944-1945.)

Moreover, as a threshold matter, McCall has not proven that the calculation of his guideline range was actually erroneous, much less obviously so. His claim appears to rest upon the unsubstantiated proposition that a prosecutor's remarks during trial, about the conduct which proved each count of conviction, necessarily limit a sentencing court's later determination of the advisory guideline range. (Doc. 17, Defendant's Brief at 23 (arguing that the "district court knew the government considered each Count to apply to one particular victim, and yet . . . allowed the probation office to assign three victims to each of three Counts of conviction").) For sentencing purposes, however, a court is expected to consider not merely the offense of conviction, but also "all relevant conduct," as defined in

U.S.S.G. § 1B1.3, which includes even uncharged conduct.  U.S.S.G. § 1B1.1(H).

For purposes of child-pornography offenses, "relevant conduct" includes "all acts

. . . by the defendant . . . that occurred during the commission of the offense of

conviction, in preparation for that offense, or in the course of attempting to avoid

detection or responsibility for that offense."  U.S.S.G. § 1B1.3(a)(1) (thus requiring

that the uncharged conduct be both temporally related and "relevant"—*i.e.*, similar

or closely related—to the offense of conviction).  Regardless of the prosecutor's

statements during trial that McCall had been *charged* with conduct relating to only

one specific victim per count, the district court was also free to consider *uncharged*

conduct as "relevant conduct" for purposes of the guideline calculations.  In short,

McCall has not satisfied any of the four prongs of the plain-error test:  he has not

proven the existence of (1) an error (2) which was obvious, (3) which affected his

substantial rights, and (4) which affected the fairness or public reputation of the

judicial system.  His challenge to the procedural reasonableness of his sentence

should be rejected.

# CONCLUSION

For the foregoing reasons, this Court should affirm McCall's convictions and sentence.

Respectfully submitted,

Nancy Stallard Harr
United States Attorney

By:    *s/ Helen C.T. Smith*
Helen C.T. Smith
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that, on March 9, 2017, this brief was filed electronically. Notice of its filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and those parties may access this brief through the Court's electronic filing system.

*s/ Helen C.T. Smith*
Helen C.T. Smith
Assistant United States Attorney

## CERTIFICATION PURSUANT TO RULE 32(A)(7)(B)

I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, in that it contains 6,129 words, excluding the cover, table of contents, table of authorities, statement regarding oral argument, the certificates of counsel, and the designation of relevant district court documents. This certification is based upon the word count of the word-processing program used by the United States, Microsoft Word 2010.

*s/ Helen C.T. Smith*
Helen C.T. Smith
Assistant United States Attorney

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

UNITED STATES OF AMERICA,
          Plaintiff-Appellee,
          v.

RONNIE LEE McCALL,
          Defendant-Appellant.

On appeal from the United
States District Court for the
Eastern District of Tennessee
          No. 2:13-cr-92

| ENTRY NO. | DESCRIPTION OF ENTRY | PAGE ID# RANGE |
|-----------|---------------------|----------------|
| 3 | Indictment | 3-5 |
| 23 | Plea Agreement | 37-44 |
| 143 | Exhibit /Witness List | 1182-1185 |
| 145 | Jury Verdict | 1187-1189 |
| 171 | Connie McCall Judgment | 1244-1249 |
| 174 | (Sealed) Presentence Report | 1257-1282 |
| 182 | Ronnie McCall Judgment | 1339-1346 |
| 184 | Notice of Appeal | 1351-1352 |
| 194 | Sentencing Transcript | 1936-1937 |
| 197 | Trial Transcript | 1975-2088 |
| 198 | Trial Transcript | 2084-2292 |
| 199 | Trial Transcript | 2293-2415 |

 s/ Helen C.T. Smith
Helen C.T. Smith
Assistant United States Attorney